It cannot be denied but that forfeiture for felony was part of the laws of England; and that the law in that respect, except *Page 141 
so far as related to suicide, has not been altered by the laws of this State; but I believe there is no instance where the State has ever availed herself of the right which accrued by forfeiture; no mode has been pointed out by law to make the right available; no commissioners of forfeited property have been appointed, as has been done in regard to escheated property, and as was done in regard to confiscated property during the Revolutionary War. If, therefore, the enforcement of the right of forfeiture was the reason why the creditor of the felon could not recover in England, that reason will not hold good in this country.
The law in regard to lands had relation to the time of the fact committed, in regard to goods and chattels, to conviction of the felon. 4 Bl., 387. It is said, in the same book, "that in gross and atrocious injuries the private wrong was swallowed up in the public; that satisfaction to the individual was seldom made, the satisfaction to the public being so very great that, as the public crime is not otherwise avenged than by forfeiture of life and property, it is impossible afterwards to make reparation for the private wrong, which can only be had from the body or goods of the aggressor." In England, after forfeiture, there is nothing left for the creditors of the felon. In this State the fund out of which creditors may expect (266) payment has never, as far as I know, been diminished.
But it is said that the law is founded in policy, which postpones or suspends the claims of individuals until the acquittal or conviction of the person charged with the felony. 12 East, 409. For, otherwise, felony would go unpunished. 1 Hale, 546.
The same evidence which showed a felony had been committed was also the foundation of the king's claim by forfeiture, and to this claim of the king that of the individual was obliged to yield until the question was settled whether a felony had been committed or not. If a felony had been committed, the claim of the individual was hopeless, for the reason before given; if no felony was committed, the king's claim was at an end, and the individual was at liberty to pursue the aggressor by suit. This appears to me to be the true reason why the suit of the individual was suspended until the issue of the prosecution for felony was known. Policy does not suspend the individual's right of suing where offenses are committed that are not felonies, as in perjury, forgery, or even in capital cases that are not declared felonies. 4 Bl., 97. If, then, policy dictated the rule, it was a policy intimately connected with and strongly allied to the king's interest to forfeitures upon conviction. But in England, where the king's claim was at an end, the individual's claim was available; so, I think, in this State, when the public asserts no claim by forfeiture, the claim of the citizen should be available. *Page 142 
But if I am mistaken as to this rule of policy, the record states that the plaintiff, by consent of the Attorney-General, preferred a bill of indictment against the defendant, and the grand jury returned it "Not a true bill"; and they did so, for aught that appears to this Court, without any collusion or fraud on the part of the plaintiff. That being the fact, I think, in the spirit of that rule of policy, (267) he is entitled to his action. The grand jury were the only and proper tribunal from which a prosecution for the felony could originate. The plaintiff had no control over their finding.
It is true that finding is no bar to another prosecution; but if the plaintiff has acted without fraud, and no other witness can be procured to go before the grand jury, it is conclusive on him. As to the objection that the same evidence which has enabled the plaintiff to recover this verdict would have induced the grand jury to find the bill of indictment "A true bill," I cannot give any solution or explanation which I know to be founded in fact; but I can readily conjecture how such a thing might happen. Witnesses must go before the grand jury in person; but if they cannot be procured, their depositions, under certain circumstances, may be read on a trial in a civil action.
Goddard v. Smith, 1 Salk., 21, has been read to show that it was not sufficient that the bill of indictment should have been returned "Not a true bill," but that there should have been either a conviction or acquittal upon it. That was an action for a malicious prosecution, where the plaintiff alleged in his declaration that he was in due form of law acquitted on the indictment. The record showed that a nolle prosequi had been entered; the court said the record did not support the declaration, for the nolle prosequi was a discharge from the indictment, but not an acquittal of the crime. But they did not say that if it had been set forth in the declaration that a nolle prosequi had been entered, and the record had supported that allegation, that the plaintiff could not go on with his suit, because the prosecution had not been finally decided upon.
I think the plaintiff is entitled to judgment.